ORIGINAL

Approved: _____
CECILIA E. VOGEL
Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

# 19MAG 8501

- - - - - - - - - - - - - X
                                    :     COMPLAINT
UNITED STATES OF AMERICA            :
                                    :     Violation of 21 U.S.C.
       - v. -                       :     § 846
                                    :
ROSA SANTIAGO RODRIGUEZ,            :     COUNTY OF OFFENSE:
                                    :     NEW YORK
          Defendant.                :
                                    :
- - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JOHN KERWICK, being duly sworn, deposes and says that
he is a Task Force Officer with the Drug Enforcement
Administration ("DEA"), and charges as follows:

## COUNT ONE

        1.   In or about September 2019, in the Southern
District of New York and elsewhere, ROSA SANTIAGO RODRIGUEZ, the
defendant, and others known and unknown, intentionally and
knowingly did combine, conspire, confederate, and agree together
and with each other to violate the narcotics laws of the United
States.

        2.   It was a part and an object of the conspiracy
that ROSA SANTIAGO RODRIGUEZ, the defendant, and others known
and unknown, would and did distribute and possess with intent to
distribute a controlled substance, in violation of Title 21,
United States Code, Section 841(a)(1).

3.     The controlled substance that ROSA SANTIAGO
RODRIGUEZ, the defendant, conspired to distribute and possess
with intent to distribute was 500 grams and more of mixtures and
substances containing a detectable amount of cocaine, in
violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The basis for my knowledge and the foregoing charge
are, in part, as follows:

4.     I am a Task Force Officer with the DEA. I have
been personally involved in the investigation of this matter.
This Affidavit is based upon my personal participation in the
investigation, my examination of reports and records, and my
conversations with other law enforcement agents and other
individuals. Because this Affidavit is being submitted for the
limited purpose of demonstrating probable cause, it does not
include all the facts that I have learned during the course of
my investigation. Where the contents of documents and the
actions, statements, and conversations of others are reported
herein, they are reported in substance and in part, except where
otherwise indicated.

5.     Since in or about May 2019, the DEA has been
investigating a drug trafficking organization ("DTO") that is
transporting narcotics from the Southwest to the Northeast of
the United States, including the New York metropolitan area.
The investigation has resulted in seizures of fentanyl and
heroin in New York, Rhode Island, and New Jersey. During the
course of its investigation, the DEA identified an apartment in
Washington Heights in Manhattan ("Apartment-1") as a location
potentially used by the DTO in its drug trafficking activities.

6.     Based on my participation in this investigation,
including my conversations with other law enforcement agents, I
have learned the following, in substance and in part:

a.     On or about September 10, 2019, at
approximately 6:30 a.m., I and another law enforcement agent
visited Apartment-1 and knocked on the door.  I observed lights
on in Apartment-1 but no one responded to the knock.  The other
agent and I waited outside of Aparmtent-1. At approximately
8:00 a.m., ROSA SANTIAGO RODRIGUEZ, the defendant, exited
Apartment-1 with a young boy, who she later identified as her
son.  The other agent and I identified ourselves as law
enforcement and asked to speak with SANTIAGO RODRIGUEZ.

2

SANTIAGO RODRIGUEZ agreed to speak with us in Apartment-1.
SANTIAGO RODRIGUEZ stated, in sum and substance, that she lives
alone in Apartment-1 with her son and that she has lived in
Apartment-1 for approximately six years.

                b.    The other agent and I subsequently spoke
with SANTIAGO RODRIGUEZ in English in the kitchen of Apartment-
1.  Other law enforcement agents waited outside of Apartment-1.
During the conversation, SANTIAGO RODRIGUEZ put her jacket and
purse on top of what appeared to be a money counter on the
stovetop, as if to hide the money counter.  I asked SANTIAGO
RODRIGUEZ about the money counter, and she responded, in sum and
substance, that she had it for a jewelry business. During the
conversation, I also observed several bags of rubber bands in
the kitchen and a small bag containing what appeared to be
marijuana. The other agent and I informed SANTIAGO RODRIGUEZ of
the general nature of the DEA investigation and asked her, in
sum and substance, whether there were any firearms, any
significant amounts of cash, or anything illegal in Apartment-1,
all of which she denied.

                c.    During the conversation, another agent and I
asked SANTIAGO RODRIGUEZ if she wanted to speak with a Spanish-
speaking agent, to which SANTIAGO RODRIGUEZ responded
affirmatively.  The other agent and I put a Spanish-speaking
agent on speakerphone.  With the assistance of the Spanish-
speaking agent, I requested to search Apartment-1.  SANTIAGO
RODRIGUEZ consented orally and signed a written, Spanish consent
to search form authorizing the DEA to search Apartment-1.

                d.    I and other law enforcement agents, who had
previously been waiting outside of Apartment-1, subsequently
searched Apartment-1.  During the search, law enforcement found
the following, among other things:

                i.    A brick-like, vacuum-sealed package was
recovered in a kitchen cupboard.  Based on a field test of the
contents of the package, I have learned that the contents of the
package have tested positive for cocaine and that the package
weighs approximately one kilogram.  In the vicinity of where the
brick-like package was recovered was a mask and additional bags
of rubber bands.  Based on my training and experience, I know
that such materials are often used in the course of packaging
narcotics for distribution.

3

           ii.       Approximately $100,000 in cash bundled in rubber bands inside of an open shopping bag was recovered on top of the bed in what appeared to be the child's room.

           iii.      Approximately $10,000 to $20,000 in cash bundled in rubber bands inside of a purse was recovered in a closet near the entry of Apartment-1.

           iv.      A money counter was recovered from the vicinity of the stovetop in the kitchen.

           v.      A pink notebook was recovered on a kitchen table that contains SANTIAGO RODRIGUEZ's name on various pages and appears, based on my training and experience, to be a ledger.  The ledger appears to list, among other things, various large sums of money in the tens and hundreds of thousands of dollars and lists in various places the names of different individuals.  Based on my training and experience, I know that individuals involved in narcotics distribution often keep ledgers to track payments and amounts owed for the narcotics.

           vi.      A box of bullets and a small scale were recovered inside of a kitchen cabinet.  Based on my training and experience, I know that scales such as the one recovered in the kitchen cabinet are often used in the course of packaging narcotics for distribution.

           vii.      Approximately several hundred small zip lock bags in a plastic container were recovered in the kitchen. Based on my training and experience, I know that zip lock bags such as those recovered from Apartment-1 are often used in the course of packaging narcotics for distribution.

           e.      During the course of the search, SANTIAGO RODRIGUEZ and her son remained at liberty in Apartment-1. During the course of the search, I asked SANTIAGO RODRIGUEZ various questions in English regarding the recovered items.  SANTIAGO RODRIGUEZ stated, in substance and in part, the following:

           i.      The cash recovered in Apartment-1 in part belonged to other unidentified people.

           ii.      She knew the brick-like package recovered in the kitchen contained narcotics but she did not know what kind of narcotics.  In response to questions regarding who owned the narcotics, she stated in substance and part that "it is not important" and "why does it even matter."

4

iii.    She previously had a firearm in
Apartment-1 but an unidentified person removed it from
Apartment-1.

f.    After the search of Apartment-1 was
completed, SANTIAGO RODRIGUEZ was handcuffed and arrested.

WHEREFORE, I respectfully request that ROSA SANTIAGO
RODRIGUEZ, the defendant, be imprisoned or bailed, as the case
may be.

John Kerwick
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
10th day of September, 2019

THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

5